UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VERNE W.,[1]

                            Plaintiff,           Case # 23-cv-6277-FPG

v.                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

## INTRODUCTION

On November 12, 2020, Plaintiff Verne W. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 25. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") Kenneth Theurer on January 26, 2022. *Id.* Following the hearing, on February 10, 2022, the ALJ issued an unfavorable decision. *Id.* at 22. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. *Id.* at 1-3. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

[3] The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

When reviewing a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.   Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him to perform alternative substantial gainful work which exists in the national economy in light of his age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

2

**DISCUSSION**

I.      **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 7, 2019, the alleged onset date.  Tr. 27.  At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, tachycardia, degenerative disc disease of the lumbar spine with radiculopathy, and post-traumatic stress disorder ("PTSD").  *Id.* at 27-28.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.  *Id.* at 28-30.  The ALJ then determined that Plaintiff maintained the RFC to perform sedentary work, with certain limitations. *Id.* at 30.  Plaintiff could "occasionally climb ramps or stairs"; "never climb ladders, ropes, or scaffolds"; and "occasionally balance, stoop, kneel, crouch, and crawl."  *Id.*  He "should avoid working at unprotected heights or in conjunction with dangerous machinery," and could "tolerate occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions."  *Id.*  The ALJ further limited Plaintiff to "work involving simple, routine, and repetitive tasks; in a work environment free of fast-paced production requirements; involving only simple, work-related decision; with few, if any, workplace changes."  *Id.*  Finally, the ALJ determined that Plaintiff should have "no more than occasional, brief interactions with coworkers, supervisors, and the public."  *Id.*

At step four, the ALJ concluded that Plaintiff could not perform his past relevant work.  Tr. 36.  At step five, the ALJ, relying on vocational expert testimony, determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including,

ticket counter, document preparer, and addresser. *Id.* at 37. Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id.* at 38.

## II.    Analysis

Plaintiff argues that either reversal for the award of benefits or remand for further proceedings is warranted because the ALJ failed to properly evaluate (i) the medical opinion evidence and (ii) Plaintiff's subjective statements. *See* ECF No. 9 at 16-30. The Commissioner contends that the ALJ adequately evaluated the opinion evidence and Plaintiff's subjective complaints, and that substantial evidence supports his determination. *See* ECF No. 10 at 2-3. As explained below, the Court agrees with the Commissioner.

### a.    The Medical Opinion Evidence

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence with respect to both his physical and mental limitations. With respect to his physical limitations, Plaintiff challenges the ALJ's evaluation of the opinions of two treating sources, endocrinologist Dr. Barbara Mols-Kowalczewski and nurse practitioner Kathleen Andrews, and those of examining consultant Dr. Gilbert Jenouri, and two non-examining state agency consultants, Dr. Alan Auerbach and Dr. Judi Rosenthal. *See* ECF No. 9 at 18-24. He asserts that, contrary to the ALJ's conclusion, Dr. Mols-Kowalczewski and N.P. Andrews provided supportive explanations for their opinions. *See id.* at 18. Moreover, Plaintiff asserts that "even partial reliance on the non-treating consultants was error under the facts in this case." *Id.* at 22. For similar reasons, Plaintiff also challenges the ALJ's assessment of the opinions of treating psychiatric nurse practitioner Tammy Balamut, examining psychologists Dr. James Ellis and Dr. Sara Long, and two non-examining state agency psychologists, Dr. Terri Bruni and Dr. Carlton Walker. *Id.* at 24-28. As

explained below, the ALJ's analysis of neither the opinions related to Plaintiff's physical limitations nor those related to Plaintiff's mental limitations warrants remand.

In making a disability determination, an ALJ must consider all medical opinions and prior administrative medical findings and articulate how persuasive they are. 20 C.F.R. § 404.1520c(a)-(b). The ALJ must consider five factors in evaluating the persuasiveness of medical opinions and prior administrative medical findings: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* § 404.1520c(c)(1)-(5). Of the five factors, supportability and consistency are the most important. *See id.* § 404.1520c(a), (b)(2). Accordingly, the ALJ will explain how he considered the supportability and consistency factors, but will not necessarily explain how he considered the remaining factors. *See id.* § 404.1520c(b)(2). The analysis of these factors may overlap, because both "supportability and consistency in part require comparison of the medical opinions with other medical sources." *Mark K. v. Comm'r of Soc. Sec.*, No. 20-CV-833, 2021 WL 4220621, at *4 (W.D.N.Y. Sept. 16, 2021).

Under the SSA's latest regulations, "no special deference is given to the opinion of the treating physician." *Tibbles v. Comm'r of Soc. Sec.*, No. 22-1127-cv, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (citing 20 C.F.R. § 404.1520c). Instead, the ALJ is free "to choose between properly submitted medical opinions, and may give greater weight to the report of a consultative physician than to that of a treating physician." *Id.*

Here, the ALJ properly evaluated the supportability and consistency factors in evaluating the medical opinions and prior administrative medical findings and permissibly determined that the opinions of Plaintiff's treating sources were less persuasive than those of the consultative examiners. *See Tibbles*, 2023 WL 3477127, at *2; *see also* 20 C.F.R. § 404.1520c.

The Court begins with the ALJ's analysis of Dr. Mols-Kowalczewski's and N.P. Andrews' opinions.  Contrary to Plaintiff's assertion, the ALJ adequately discussed both the supportability and consistency factors and concluded that the limitations that Dr. Mols-Kowalczewski and N.P. Andrews identified were neither "supported by the objective evidence," Tr. 34, nor consistent with the other evidence of record, *id.* at 35.  For example, the ALJ noted that although Dr. Mols-Kowalczewski opined that Plaintiff needed to elevate his legs, care providers have, at most, recorded occasional ankle swelling, rendering "the described need to elevate the legs [inconsistent] with a record repeatedly showing no swelling or edema in the lower extremities." *Id.* at 35.  Moreover, although Dr. Mols-Kowalczewski referred to cardiology reports in support of this limitation, "she did not identify any specific opinion or report," which the ALJ properly concluded made her opinion less persuasive.  *Id.*; *see* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support her medical opinion[] . . ., the more persuasive the medical opinions . . . will be.").  The ALJ also addressed the consistency of the opinions' limitations in lifting, standing, or sitting, noting that the "extreme limitations in these function areas [were] not consistent with benign spinal imaging studies, normal cardiovascular exam findings, or findings of full musculoskeletal motion and extremity strength."  Tr. 35.

Turning to the consultative examiners, the ALJ found Dr. Jenouri's assessment to be "generally persuasive."  Tr. at 34.  Dr. Jenouri observed a normal gait, without the use of assistive devices and noted that, although Plaintiff was limited in his ability to squat, he "needed no help changing for [the examination] or getting on and off [the] exam table." *Id.* at 572.  Dr. Jenouri's musculoskeletal examination revealed some limitations in his range of motion, particularly in his lumbar spine, hips, and ankles.  *See id.* at 573.  Dr. Jenouri also noted sciatic notch tenderness on

both sides.  *Id.*  However, Plaintiff displayed full strength in his upper and lower extremities, intact hand and finger dexterity, and full grip strength.  *Id.*  Dr. Jenouri therefore opined that Plaintiff had a moderate restriction walking and standing for long periods, bending, stair climbing, lifting, and carrying.  *Id.* at 574.  Dr. Jenouri opined further that Plaintiff is restricted from mild or greater exertion due to heart problems.  *Id.*  The ALJ determined that although these conclusions were "somewhat non-specific," they were supported by Dr. Jenouri's "detailed, in-person exam findings" and consistent with the record as a whole.  *Id.* at 34; *see also Mark K.*, 2021 WL 4220621, at *4 (noting overlap between analysis of supportability and consistency factors).  The ALJ also properly noted that Dr. Jenouri was a "program knowledgeable expert."  Tr. 34; *see also* 20 C.F.R. § 404.1520c(c)(5) (ALJ may consider evidence showing familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements).

Unlike Dr. Jenouri, Dr. Auerbach and Dr. Rosenthal did not examine Plaintiff, but instead "independently reviewed [his] records."  Tr. 34.  Dr. Auerbach concluded that Plaintiff could both stand or walk and sit for a total about six hours in an eight-hour workday.  *Id.* 106.  He further opined that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds.  *Id.*  Dr. Auerbach also provided less restrictive limitations for bending and climbing stairs, concluding that Plaintiff could do so "frequently."  *Id.*  Dr. Rosenthal's findings aligned with those of Dr. Auerbach, *see id.* at 125, and both consultative examiners concluded that Plaintiff was capable of performing light work.  *Id.* at 109, 129. The ALJ noted that these conclusions were supported by the medical evidence available to Dr. Rosenthal and Dr. Auerbach, and consistent with each other.  *See id.* at 34 (noting that both examiners reviewed Plaintiff's records and arrived at the same conclusions).  As with Dr. Jenouri, the ALJ also properly considered the examiners' familiarity with the SSA's disability program policies and requirements.  *Id.* at 34; *see also* 20

C.F.R. § 404.1520c(c)(5).   Although the ALJ concluded that these findings were generally persuasive, he concluded that additional limitations were required given the record available for his review.  Tr. 34.

Plaintiff points to records showing clinical evidence of, among other things, chest pain, shortness of breath, tachycardia, dizziness, extremity pain and numbness, difficulty thinking and concentrating, and nausea/vomiting.  *See* ECF No. 9 at 19.  Given this evidence, he argues, the opinions of Dr. Mols-Kowalczewski and N.P. Andrews are "well-supported" and consistent with treatment records.  *Id.*  However, the ALJ expressly considered the required factors and identified sufficient record evidence supporting his analysis of those factors.  This argument therefore amounts to a request for the Court to reweigh the evidence.  But it "is not the function of this Court to reweigh the evidence—so long as the ALJ's conclusions are supported by substantial evidence," as they are here, "they must be affirmed."  *Kimberly H. v. Comm'r of Soc. Sec.*, No. 21-CV-269, 2023 WL 3138532, at *6 (W.D.N.Y. Apr. 28, 2023).

Finally, and contrary to Plaintiff's further assertion, ECF No. 9 at 21-22, the ALJ identified the evidence on which he relied in developing the physical portion of the RFC.  *See* Tr. 32 (citing treatment records, echocardiogram results, and radiographic study results), 34 (citing Dr. Jenouri's opinion identifying moderate restrictions in, among other things, standing or walking for long periods, bending, and climbing stairs).  "An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order).  In developing the RFC, the ALJ weighs and synthesizes all of the evidence available to render an RFC finding consistent with the record as a whole.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  Here, the ALJ did just that.  He discussed the relevant opinions, treatment

records, and test results related to Plaintiff's severe physical impairments and concluded that they did not warrant restrictions beyond "limiting him to the sedentary exertional level, with additional postural and environmental restrictions." Tr. 32. Plaintiff's contention that the ALJ "erred by not citing to any *specific* medical facts" or "persuasive non-medical evidence," ECF No. 9 at 21, that supports the RFC is therefore unpersuasive.

In sum, the ALJ adequately explained why he found the opinion of Dr. Jenouri and the prior administrative medical findings of Dr. Auerbach and Dr. Rosenthal more persuasive than the opinions of Dr. Mols-Kowalczewski and N.P. Andrews. *Tibbles*, 2023 WL 3477127, at *2 ("[A]n ALJ is free . . . to choose between properly submitted medical opinions and may give greater weight to the report of a consultative physician than to that of a treating physician." (citations omitted)). The ALJ properly relied on the opinions and findings of Dr. Jenouri, Dr. Auerbach, and Dr. Rosenthal, as well as relevant treatment notes and test results in developing the physical portion of the RFC. *See id.* And because the ALJ's conclusions were "permissible characterizations of the record[,] . . . substantial evidence supports the ALJ's weighing of the opinion evidence." *Id.*

The same is true for the opinions relating to Plaintiff's mental limitations. With respect to each of the opinions identifying limitations related to Plaintiff's mental impairments, the ALJ properly evaluated the supportability and consistency factors in evaluating the medical opinions and prior administrative medical findings and permissibly determined that the opinions of Plaintiff's treating psychiatric nurse practitioner and independent examiner were less persuasive than that of the consultative examiner. *See Tibbles*, 2023 WL 3477127, at *2; *see also* 20 C.F.R. § 404.1520c.

The ALJ began with consultative examiner Dr. Long, *see* Tr. 35, who, following her examination of Plaintiff, identified only mild limitations regarding regulating emotions. *Id.* at 580.

9

He found Dr. Long's opinion to be consistent with the overall record and generally persuasive, but noted that the complete record available to him supported greater limitations "in the areas of social interaction, ability to sustain pace, and adaptation." *Id.* at 35. Similarly, the ALJ noted that, while the findings of the non-examining state agency consultants were "not inconsistent with the record available at the time of [their] review," *id.*, Plaintiff's ongoing treatment supported some mental restrictions. *Id.* Nevertheless, he concluded that those findings remained "somewhat persuasive, insofar as the evidence does not support disabling psychiatric symptoms in this case." *Id.*

The ALJ likewise conducted the required analysis in evaluating the opinions of Plaintiff's treating psychiatric nurse practitioner Balamut and independent medical examiner Dr. Ellis. N.P. Balamut identified marked difficulties in the areas of accepting criticism from supervisors, requesting assistance, and completing a workday without interruption. *See* Tr. 673. She also identified moderate-to-marked limitations in nearly all mental activities, and moderate limitations in maintaining socially appropriate behavior and adhering to basic standards of neatness. *See id.* The ALJ noted that these moderate limitations were "both supported by direct observations of [Plaintiff] and consistent with the positive objective findings of record." *Id.* at 35. The marked limitations, however, were not supported, because "[a]side from a single period of increased symptoms, mental status examinations were repeatedly benign, and extended so far as to depict normal to good cognition, memory, behavior, concentration, insight judgment, and impulse control." *Id.* at 36. In support of this analysis, the ALJ cited, for example, treatment records (i) recording a review of systems negative for depression, substance abuse, and suicidal ideation, Tr. 440; (ii) describing him as alert and oriented, Tr. 591, 597; and (iii) demonstrating "good" attention, concentration, judgment, and impulse control, Tr. 647, and appropriate thought content, Tr. 652. With respect to Dr. Ellis' opinion that identified moderate or greater restrictions in every

10

area of Plaintiff's mental functioning, the ALJ likewise properly evaluated the supportability and consistency factors by noting that his conclusions were inconsistent with "the overall record, and are not even reflected in Dr. Ellis' own examination findings," Tr. 36, which were largely normal, except for dysphoric mood.  *Id.* at 678.

As with the opinions regarding Plaintiff's physical limitations, the ALJ adequately articulated his evaluation of the competing opinions.  *See Tibbles*, 2023 WL 3477127, at *2.  And, after doing so, he properly relied on those opinions and findings he determined were more persuasive, as well as the other relevant medical evidence of record in developing the mental portion of the RFC.  *See* Tr. 33, 35-36.  The Court therefore concludes that substantial evidence supports the ALJ's determinations with respect to the medical opinions and findings, and that his analysis was based on the correct legal standard.  *Talavera*, 697 F.3d at 151.  Neither reversal for calculation of benefits nor remand for further administrative proceedings is therefore warranted.

## III.   Plaintiff's Subjective Statements

Plaintiff asserts that the ALJ's evaluation of his subjective statements is not supported by substantial evidence because the ALJ erred in (1) concluding that the other evidence in the record did not support a finding of disability, (2) relying on Plaintiff's response to treatment, and (3) pointing to Plaintiff's lack of psychiatric hospitalization.  ECF No. 9 at 28-31.  The Commissioner argues that the ALJ properly concluded that Plaintiff's subjective statements were not entirely consistent with the medical and other evidence and that his finding is supported by substantial evidence in the record.  *See* ECF No. 10-1 at 26.  As explained below, the Court agrees with the Commissioner.

A claimant's statements about his "pain and other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a).  "The regulations provide a two-step process for

evaluating a claimant's assertions of pain and other limitations." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). If so, "at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (citing 20 C.F.R. 404.1529(a)); *see also* SSR 16-3p, 2016 WL 1119029, at *3-4 (Mar. 16, 2016).

In evaluating a claimant's statements about his symptoms and resulting limitations, the ALJ also considers several factors including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) other treatment that the individual has received; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms; and (7) any other relevant factors. *See* SSR 16-3p, 2016 WL 1119029, at *7 (citing 20 C.F.R. § 404.1529(c)(3)).

Plaintiff first argues that his subjective statements are consistent with the opinions identifying greater restrictions than those that the ALJ incorporated into the RFC. *See* ECF No. 9 at 29-30. But, as explained above, the ALJ properly analyzed the persuasiveness of those opinions. And although an ALJ will not reject a person's subjective statements "*solely* because the objective medical evidence does not substantiate his statements," 20 C.F.R. § 404.1529(c)(2), the ALJ did not rely "solely" on objective medical evidence, but instead also took into account "symptom-related functional limitations and restrictions that [his] medical sources . . . report[ed]." *Id.* § 404.1529(c)(3). Moreover, the ALJ properly "considered [Plaintiff's] statements in relation to the

objective medical evidence and other evidence," as well as inconsistencies in the evidence and "conflicts between [his] statements and the rest of the evidence." *Id.* § 404.1529(c)(4).

For example, with respect to Plaintiff's physical impairments, the ALJ stated that Plaintiff's regular use of a treadmill and recumbent bicycle, and the recommendation that he engage in cardiovascular exercise at least five days a week were "not entirely consistent with allegations of disabling cardiac and spinal conditions." Tr. 32; *compare* Tr. 59 (Plaintiff's testimony that he is "out cold" within fifteen to twenty minutes of starting physical activity), *with* Tr. 565 (medical record indicating that Plaintiff regularly walks on a treadmill for thirty minutes and rides a recumbent bicycle for twenty minutes). The ALJ considered this along with Plaintiff's "positive overall response to treatment" for his tachycardia, which contrasted with records from prior years that "sometimes depicted uncontrolled symptoms." Tr. 33. With respect to mental impairments, the ALJ noted that Plaintiff's clinical history did not indicate "uncontrolled symptoms or inadequate relief of symptoms." *Id.* He further noted that there were limited positive findings in 2019 and 2020, with the evidence describing Plaintiff as "fully oriented, with normal mood, affect, behavior, cognition, attention, and judgment." *Id.*

The ALJ acknowledged the period of increased symptomology in April 2021, but also noted Plaintiff's rapid improvement in May 2021 after a medication adjustment. *See* Tr. 33. Contrary to Plaintiff's assertion, it was permissible to consider this response to treatment, particularly in light of the limited positive findings throughout 2019 and 2020 and the opinion of the consultative examiner. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order) (substantial evidence supported finding that claimant improved with treatment where treatment records supported such a finding and consultative examiner concluded that

claimant had a fair to good prognosis with continued treatment); *see also* Tr. 581 (consultative examiner's statement that prognosis is good with continued therapy).

Finally, the ALJ did rely, in part, on the fact that Plaintiff has not been hospitalized for his mental impairments.  *See* Tr. 33 ("The claimant has not required recurrent emergency department visits, inpatient hospitalization, a day treatment program, or placement in a board and care facility for uncontrolled psychiatric symptoms.").  As Plaintiff correctly argues, a person need not be institutionalized to be found disabled. *See e.g.*, *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (fact that plaintiff was not institutionalized did not compel conclusion that he was capable of gainful employment). But, here, the ALJ cited other reasons for discounting Plaintiff's subjective statements.  Plaintiff's reliance on*, for example*, *Adkins v. Astrue* is therefore misplaced, because even without the reference to Plaintiff's lack of hospitalization, the evidence of record provides sufficient support for the ALJ's decision.  *Cf.* No. 309-CV-217, 2010 WL 3782388, at *9 (N.D. Ind. Sept. 21, 2010) (remand warranted where ALJ improperly relied on lack of hospitalization to discredit claimant's testimony and failed to otherwise adequately explain decision to do so).

In sum, the ALJ properly evaluated Plaintiff's subjective statements in light of both the objective medical evidence and other evidence of record as required under the regulations.  The ALJ therefore did not commit legal error and his conclusion is supported by substantial evidence. *Talavera*, 697 F.3d at 151.  Accordingly, neither reversal for calculation of benefits nor remand for further administrative proceedings is warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 10, is GRANTED, and the decision of the Commissioner is AFFIRMED.  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 14, 2023
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York